# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FIRESTONE FINANCIAL, LLC, successor by merger to FIRESTONE FINANCIAL CORP., <br><br> Plaintiff, <br> v. <br><br> JOHN MEYER, et al., <br><br> Defendants. | Case No. 13 C 7241 <br><br> Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Firestone Financial, LLC has moved to dismiss Defendant John Meyer's Counterclaim. For the following reasons, the Court denies Firestone's motion.

## FACTUAL BACKGROUND

On December 18, 2013, Defendant John Meyer ("Meyer"), along with corporate defendants JHM Equipment Leasing Company ("JHM"), J. H. Meyer Enterprises, Inc. ("Meyer Enterprises"), and Dolphin Laundry Services, Inc. ("Dolphin," collectively, the "Corporate Defendants") filed a Counterclaim (the "Counterclaim") against Firestone Financial, LLC ("Firestone"), alleging a claim of promissory estoppel. (R. 23 at 26, ¶¶ 20–28.) The Corporate Defendants have since been dismissed from the case. (R. 55.) For the following reasons, the Court denies Firestone's motion to dismiss the Counterclaim.

The Court takes the following relevant facts from Plaintiff's Complaint (R. 1) and Defendants' Answer, Affirmative Defenses & Counterclaim. (R. 23.) In evaluating the motion to dismiss, the Court accepts as true the Counterclaim's well-pleaded factual allegations and

draws all reasonable inferences in favor of Defendants. *See Stayart v. Yahoo!, Inc.*, 623 F.3d 436, 438 (7th Cir. 2010).

Firestone is a Massachusetts finance company with its principal place of business in Massachusetts. (R.1 at 1, ¶ 1.) John Meyer is a citizen of the State of Illinois and resides in Hinsdale, Illinois. (*Id.* at 2, ¶ 5.) The Corporate Defendants, JHM, Meyer Enterprises, and Dolphin, are all Illinois corporations with their principal places of business in Illinois. (*Id.* at 1–2, ¶¶ 2–4.) JHM is an Illinois corporation in the business of renting commercial laundry machines to building owners in and around Chicago. (R. 23 at 22, ¶ 1.)

Between June 2012 and June 2013, Firestone made a series of four loans to JHM for the laundry machine company to finance new equipment. (R. 1 at 2–7.) In total, Firestone loaned JHM about $254,114.99. (*Id.*) JHM secured each loan with its laundry equipment. (*Id.*) Additionally, Meyer Enterprises, Dolphin, and Meyer guaranteed each loan. (*Id.*) Eventually, JHM defaulted on all four loans. (*Id.* at 7–8.) Afterward, Firestone filed the present diversity action against Meyer and the three companies alleging claims of breach of contract, breach of guaranty, replevin, and detinue. (*Id.*) Defendants filed an answer and the Counterclaim. (R. 23.)

Meyer alleges that Firestone was aware that the Corporate Defendants were connected and engaged in the commercial laundry business. (*Id*. at 23, ¶¶ 8–9.) Specifically, JHM places commercial laundry equipment in apartment buildings and businesses and sells domestic equipment. (*Id.*) Dolphin purchases laundry equipment and sells it to JHM and other laundry businesses. (*Id.*) Meyer Enterprises leases equipment from JHM for use in its commercial laundry business. (*Id.*) Meyer asserts that Firestone, through then Vice President of Business Development, Dan McAllister ("McAllister"), knew that the three businesses were growing.

2

(*Id.*)  Indeed, Meyer Enterprises had recently opened a new facility, doubling its capacity, while JHM's primary customer was aggressively buying and renovating buildings for the rental market.  (*Id.* at 23, ¶ 9.)

According to Meyer, around November 2012, McAllister told Meyer that he wanted to expand Firestone's investments in the laundry business.  (*Id.* at 23, ¶ 11.)  McAllister, alleges Meyer, stated that Firestone would fund any equipment through the end of the year and would create a "$500,000 line of credit for JHM's use in 2013."  (*Id.*)  Originally, McAllister said the line of credit would be established in January 2013.  (*Id.* at 24, ¶ 12.)  After the process was delayed, however, McAllister allegedly stated that Firestone would still "fund any equipment packages submitted by JHM in 2013 until the line of credit was established."  (*Id.*)  The parties agreed on the terms of the financing which were identical to the terms of the first and second loans made in 2012.  (*Id.*)

According to Meyer, it was custom for JHM to purchase equipment before it had financed the equipment.  (*Id.* at 24, ¶ 13.)  Further, Meyer alleges that "Firestone knew this and actually preferred this method of financing because the equipment could be placed in JHM's Route Business and begin generating income contemporaneously with the financing."  (*Id.*)  When McAllister promised to fund any new equipment purchase, Meyer claims, he knew Meyer and the Corporate Defendants would purchase equipment based on his representation and seek financing afterward.  (*Id.*)  Thus, Meyer concludes, McAllister's promise to finance the equipment induced Meyer and the Corporate Defendants to purchase equipment that they would not have otherwise purchased, as they did not have the money to do so on their own.  (*Id.* at 24, ¶ 14.)

At first, Firestone allegedly held up its side of the agreement. (*Id.* at 24–25, ¶ 16.) Indeed, Meyer maintains that Firestone provided JHM with the financing it requested in February of 2013. (*Id.*) Between then and June 2013, however, circumstances began to change. (*Id.*) McAllister left Firestone's employment, and David Cohen ("Cohen") began acting on behalf of Firestone. (*Id.*) Importantly, Meyer asserts that Cohen told JHM that he was aware of Firestone's agreement to finance any equipment packages in 2013. Despite Cohen's acknowledgment, however, Firestone only financed one more equipment package. (*Id.* at 25, ¶ 17.) After June 2013, Firestone refused to finance JHM's additional financing requests. (*Id.*) At that point, Meyer alleges that JHM had already purchased laundry equipment from Maytag. (*Id.*) Consequently, without Firestone's financing, JHM could not discharge its Maytag debt. (*Id.*) As a result, Maytag refused to sell equipment to the Corporate Defendants and placed the companies on a credit hold. (*Id.*) Ultimately, Meyer concludes, "[b]ecause of Firestone's actions, JHM, Dolphin and Meyer Enterprises could no longer acquire equipment and could not sell equipment." (*Id.* at 25, ¶ 18.)

Now, Meyer argues that Firestone induced JHM to purchase the laundry equipment. (*Id.* at 25-26, ¶ 19.) Specifically, Meyer claims that, without Firestone's inducement, they would not have purchased the equipment. (*Id.*) Further, Meyer argues that Firestone knew that the Corporate Defendants would suffer substantial damages if Firestone reneged on its agreement. (*Id.*) Indeed Meyer argues that Firestone, upon reneging, substantially harmed JHM, Dolphin, and Meyer Enterprises. (*Id.*) Thus, concludes Meyer, the Counterclaim for promissory estoppel should prevail.

## PROCEDURAL BACKGROUND

In February 2014, Firestone filed a motion to dismiss the Counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Counterclaim was implausible. (R. 42 at 5.) Firestone argued that Meyer and the Corporate Defendants' position hinged on "the unheard of position that Firestone, a corporation with nearly 50 years in business, [would make] a handshake deal to loan half a million dollars to a startup business to be secured after the fact." (*Id.*) Afterward, the Corporate Defendants' legal counsel withdrew from the case, and the companies did not obtain substitute counsel. (R. 113 at 4.) Consequently, Firestone moved for an entry of default judgement against the Corporate Defendants based on Illinois law, requiring all corporate defendants to be represented by counsel. (*Id.*) Judge Shadur, who presided over the case at the time, granted Firestone's motion. (*Id.*)

Later, in April 2014, the court granted Firestone's motion to dismiss the Counterclaim, finding that it was facially implausible. (*Id.* at 5.) Firestone then moved for summary judgment on its remaining claims against Meyer, arguing that he based his defenses on the same factual allegations asserted in the Counterclaim that the court previously had dismissed. (*Id.*) The court agreed and granted Firestone's motion. (*Id.*)

Subsequently, Meyer filed an appeal, challenging the district court's dismissal of the Counterclaim and grant of summary judgment in Firestone's favor. On August 10, 2015, the Seventh Circuit reversed and remanded the district court's order. (R. 113 at 2.) Specifically, the Seventh Circuit found that Meyer's Counterclaim alleged well-pleaded factual allegations that were neither legal assertions nor conclusory statements. (*Id.* at 9–10.) Indeed, the Seventh Circuit concluded that "the relevant question . . . is *not* whether a complaint's factual allegations are true, but rather whether the complaint 'contain[s] sufficient factual matter, *accepted as true*,

to state a claim to relief that is plausible on its face.'" (*Id.* at 10) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)) (emphasis in original). "[T]he plausibility standard does not allow a court to question or otherwise disregard nonconclusory factual allegations simply because they seem unlikely." (*Id.* at 8.) Thus, after accepting the allegations in the Counterclaim as true, the Seventh Circuit found that Meyer had stated a plausible claim of promissory estoppel. (*Id.* at 10–11.)

On November 5, 2015 the Executive Committee reassigned the case to this Court. Now, Firestone again moves to dismiss Meyer's Counterclaim under Federal Rule of Civil Procedure 12(b)(6).

**LEGAL STANDARD**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. 662 (quoting *Twombly,* 550 U.S. at 570). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained

in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *see also McGowan v. Hulick,* 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor).

**ANALYSIS**

**I.      Firestone Has Waived its Rule 17(a) Objection**

As a threshold issue, the Court first addresses which defendants remain in this case. Ultimately, Meyer is the only remaining defendant. On April 7, 2014, Judge Shadur granted default judgment against all three Corporate Defendants, JHM, Meyer Enterprises, and Dolphin. (R. 55, R. 56.) No Defendant appealed that decision. Instead, only Meyer appealed the district court's order granting Firestone's motion to dismiss the Counterclaim (R. 59) and the summary judgment against himself. (R. 90.) As a result, the Seventh Circuit only addressed whether *Meyer* had successfully alleged the Counterclaim. (R. 113.) As such, the Court addresses Firestone's motion as one seeking to dismiss Meyer's Counterclaim.

Specifically, Firestone argues that Meyer is not a real party in interest under Federal Rule of Civil Procedure 17(a) and thus cannot bring the Counterclaim. (R. 121 at 4.) Firestone further argues that JHM is the real party in interest, and Meyer cannot represent JHM because a *pro se* individual cannot represent a corporation. Firestone points to the original Counterclaim, arguing that it identifies each Corporate Defendant as a Counter-Plaintiff, but fails to list John Meyer. (R. 132 at 4 (citing R. 23 at 22.))

"The real party in interest doctrine, as set forth in Rule 17(a), mandates that every action be prosecuted in the name of the real party in interest. The purpose of the rule is 'to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.'" *Tate v. Snap-On Tools Corp.*, No. 90 C 4436, 1997 WL 106275, at *4 (N.D. Ill. Feb. 11, 1997) (quoting Fed. R. Civ. P.

17(a)).  Importantly, the "'real party in interest' is a defense subject to waiver." *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010).  Indeed, a party should make an objection under Rule 17(a) with "reasonable promptness." *Id.* (quoting 6A Wright, Miller & Kane, *Federal Practice & Procedure* § 1554 (3d ed. 2008)).  "What constitutes a reasonable time to object under Rule 17(a) 'is a matter of judicial discretion that depends on the facts of each case[.]'" *Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 1339489, at *2 (N.D. Ill. Apr. 18, 2012) (quoting *Tate*, 1997 WL 106275, at *8).  The Seventh Circuit has previously found that a defendant waived its Rule 17(a) objection by asserting it for the first time during trial, seven years after the plaintiff filed the complaint.  *RK Co.*, 622 F.3d at 850–51.  Significantly, the Seventh Circuit noted that the defendant could have easily raised the objection at an earlier time.  *Id.* at 851.

Here, Firestone asserts that it has not waived this defense because it was not aware that Meyer was asserting he was party to the Counterclaim until Meyer appealed the district court's decision.  (R. 132 at 5.)  Specifically, Firestone claims that it believed only the Corporate Defendants were parties to the Counterclaim because only their names were listed as parties.  (*Id*.)  This argument is unavailing.  Indeed, Firestone should have been aware that Meyer was asserting the Counterclaim in his individual capacity.  The Counterclaim specifically stated that "[f]or their Counterclaim, *Defendants* state as follows[,]" making it clear that all listed defendants, including Meyer, asserted the Counterclaim.  (R. 23 at 22) (emphasis added).  Accordingly, Firestone could have made its Rule 17(a) argument as to Meyer over two years ago at the time it originally moved to dismiss the Counterclaim in February 2014.  (R. 42.)  *See RK Co.*, 622 F.3d at 851.  It did not.  As a result, the Court, in its discretion, finds that Firestone waived its right under Federal Rule of Civil Procedure 17(a) to object to Meyer's interest as a party to the Counterclaim.

## II. Firestone's Motion to Dismiss is Denied Pursuant to the Seventh Circuit's Previous Ruling in this Case

Further, Firestone again moves to dismiss Meyer's Counterclaim for failure to state a claim. (R. 121 at 1.) The Seventh Circuit, however, previously held that the Counterclaim successfully stated a claim upon which relief could be granted. (R. 113 at 9–10.) As a result, despite Firestone's arguments to the contrary, the Court must follow the Seventh Circuit's holding.

In its decision, the Seventh Circuit set forth the factual allegations necessary to establish a claim of promissory estoppel: "the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on that promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment" (*Id.* at 10) (quoting *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24 (Ill. 2009)).

Firestone alleges, in part, that the Seventh Circuit did not address all of its arguments. Specifically, Firestone argues that the Court should dismiss Meyer's Counterclaim for failure to state a claim because: (1) the Counterclaim is based on an email that contradicts Meyer's claim; (2) Meyer has not alleged sufficient facts to support his claim of promissory estoppel; (3) Meyer has not shown that Firestone made an unambiguous promise; and (4) Meyer's Counterclaim asserts damages that are not plausibly related to the alleged wrong. (R. 121 at 8–14.) Ultimately, these arguments aim to prove that Meyer's Counterclaim is improbable. As the Seventh Circuit previously noted, however, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (R. 113 at 8) (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556)).

9

Indeed, the Seventh Circuit directly addressed the heart of Firestone's implausibility arguments, holding that Meyer's Counterclaim stated nonconclusory facts that were entitled to a presumption of truth. (R. 121 at 9.) Subsequently, after accepting Meyer's allegations as true, the Seventh Circuit had "no difficulty concluding that they [were] sufficient to state a plausible claim of promissory estoppel:"

> Here, Mr. Meyer alleges that Firestone, through McAllister, told him that it would fund JHM's equipment purchases in 2013 under the same terms as its previous two loans. He asserts that JHM purchased equipment based on this representation and that Firestone knew that JHM would do so based on their earlier course of dealing. Finally, he alleges that Firestone later reneged on this commitment and that, as a result, JHM defaulted on its equipment purchases from Maytag, causing Maytag to blacklist Mr. Meyer's companies. These allegations are enough to state a plausible claim of promissory estoppel. *See Wigod v Wells Fargo Bank*, N.A., 673 F.3d 547, 566 (7th Cir. 2012) (concluding that a complaint which "alleged a sufficiently clear promise, evidence of [the plaintiff's] own reliance [on that promise], and an explanation of the injury that resulted[,] . . . was enough to present a facially plausible claim of promissory estoppel").

Firestone asserts no new argument that leads this Court to find differently. As a result, Meyer's Counterclaim contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal quotations omitted). Thus, the Court denies Firestone's second motion to dismiss Meyer's Counterclaim.

## CONCLUSION

For the foregoing reasons, the Court denies Firestone's motion to dismiss Meyer's Counterclaim.

**DATED: April 19, 2016**                                    **ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge