# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FIRESTONE FINANCIAL, LLC, successor by merger to FIRESTONE FINANCIAL CORP., | |
| Plaintiff, | Case No. 13 C 7241 |
| v. | Hon. Amy J. St. Eve |
| JOHN MEYER, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant JHM Equipment Leasing Company, Defendant J. H. Meyer Enterprises, Inc., and Defendant Dolphin Laundry Services, Inc. seek relief under Rule 60(b)(4) and Rule 60(b)(6) from the former district court's order dismissing the three corporations' counterclaim. For the following reasons, the Court denies the companies' motion.

## FACTUAL BACKGROUND

On December 18, 2013, corporate defendants JHM Equipment Leasing Company ("JHM"), J. H. Meyer Enterprises, Inc. ("Meyer Enterprises"), and Dolphin Laundry Services, Inc. ("Dolphin"), along with Defendant John Meyer ("Meyer"), filed a Counterclaim (the "Counterclaim") against Firestone Financial, LLC ("Firestone"), alleging a claim of promissory estoppel. (R. 23 at 26, ¶¶ 20–28.)

The Court takes the following relevant facts from Plaintiff's Complaint (R. 1) and Defendants' Answer, Affirmative Defenses & Counterclaim. (R. 23.)

Firestone is a Massachusetts finance company with its principal place of business in Massachusetts. (R.1 at 1, ¶ 1.) John Meyer is a citizen of the State of Illinois and resides in Hinsdale, Illinois. (*Id.* at 2, ¶ 5.) JHM, Meyer Enterprises, and Dolphin, are all Illinois corporations with their principal places of business in Illinois. (*Id.* at 1–2, ¶¶ 2–4.) JHM is an Illinois corporation in the business of renting commercial laundry machines to building owners in and around Chicago. (R. 23 at 22, ¶ 1.)

Between June 2012 and June 2013, Firestone made a series of four loans to JHM for the laundry machine company to finance new equipment. (R. 1 at 2–7.) In total, Firestone loaned JHM about $254,114.99. (*Id.*) JHM secured each loan with its laundry equipment. (*Id.*) Additionally, Meyer Enterprises, Dolphin, and Meyer guaranteed each loan. (*Id.*) Eventually, JHM defaulted on all four loans. (*Id.* at 7–8.) Afterward, Firestone filed the present diversity action against Meyer and the three companies alleging claims of breach of contract, breach of guaranty, replevin, and detinue. (*Id.*) Meyer and the three corporations filed an answer and the Counterclaim. (R. 23.)

Meyer alleges that Firestone was aware that the three corporations were connected and engaged in the commercial laundry business. (*Id*. at 23, ¶¶ 8–9.) Specifically, JHM places commercial laundry equipment in apartment buildings and businesses and sells domestic equipment. (*Id.*) Dolphin purchases laundry equipment and sells it to JHM and other laundry businesses. (*Id.*) Meyer Enterprises leases equipment from JHM for use in its commercial laundry business. (*Id.*) Meyer asserts that Firestone, through then Vice President of Business Development, Dan McAllister ("McAllister"), knew that the three businesses were growing. (*Id.*) Indeed, Meyer Enterprises had recently opened a new facility, doubling its capacity, while

JHM's primary customer was aggressively buying and renovating buildings for the rental market.  (*Id.* at 23, ¶ 9.)

According to Meyer, around November 2012, McAllister told Meyer that he wanted to expand Firestone's investments in the laundry business.  (*Id.* at 23, ¶ 11.)  McAllister, alleges Meyer, stated that Firestone would fund any equipment through the end of the year and would create a "$500,000 line of credit for JHM's use in 2013."  (*Id.*)  Originally, McAllister said the line of credit would be established in January 2013.  (*Id.* at 24, ¶ 12.)  After the process was delayed, however, McAllister allegedly stated that Firestone would still "fund any equipment packages submitted by JHM in 2013 until the line of credit was established."  (*Id.*)  The parties agreed on the terms of the financing which were identical to the terms of the first and second loans made in 2012.  (*Id.*)

According to Meyer, it was custom for JHM to purchase equipment before it had financed the equipment.  (*Id.* at 24, ¶ 13.)  Further, Meyer alleges that "Firestone knew this and actually preferred this method of financing because the equipment could be placed in JHM's Route Business and begin generating income contemporaneously with the financing."  (*Id.*)  When McAllister promised to fund any new equipment purchase, Meyer claims, he knew Meyer and the Corporate Defendants would purchase equipment based on his representation and seek financing afterward.  (*Id.*)  Thus, Meyer concludes, McAllister's promise to finance the equipment induced Meyer and the Corporate Defendants to purchase equipment that they would not have otherwise purchased, as they did not have the money to do so on their own.  (*Id.* at 24, ¶ 14.)

At first, Firestone allegedly held up its side of the agreement.  (*Id.* at 24–25, ¶ 16.)  Indeed, Meyer maintains that Firestone provided JHM with the financing it requested in

February of 2013. (*Id.*) Between then and June 2013, however, circumstances began to change. (*Id.*) McAllister left Firestone's employment, and David Cohen ("Cohen") began acting on behalf of Firestone. (*Id.*) Importantly, Meyer asserts that Cohen told JHM that he was aware of Firestone's agreement to finance any equipment packages in 2013. Despite Cohen's acknowledgment, however, Firestone only financed one more equipment package. (*Id.* at 25, ¶ 17.) After June 2013, Firestone refused to finance JHM's additional financing requests. (*Id.*) At that point, Meyer alleges that JHM had already purchased laundry equipment from Maytag. (*Id.*) Consequently, without Firestone's financing, JHM could not discharge its Maytag debt. (*Id.*) As a result, Maytag refused to sell equipment to the three corporations and placed the companies on a credit hold. (*Id.*) Ultimately, Meyer concludes, "[b]ecause of Firestone's actions, JHM, Dolphin and Meyer Enterprises could no longer acquire equipment and could not sell equipment." (*Id.* at 25, ¶ 18.) Meyer claims that, without Firestone's inducement, they would not have purchased the equipment, and that Firestone is liable on the basis of promissory estoppel. (*Id.* at 25–26, ¶ 19.)

## PROCEDURAL BACKGROUND

In February 2014, Firestone filed a motion to dismiss the Counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Counterclaim was implausible. (R. 42 at 5.) Afterward, the three corporations' legal counsel withdrew from the case, and the companies did not obtain substitute counsel. (R. 113 at 4.) Consequently, on April 7, 2014, Judge Shadur, who presided over the case at the time, entered a default judgment against the three corporations, as they failed to properly appear through counsel. (R. 55, 56.) As such, Judge Shadur dismissed the companies from the case. (*Id.*) In addition, Judge Shadur addressed the Counterclaim as to the three corporations on April 7, 2016. Indeed, not only did he dismiss

4

the companies, but he also stated, "I am granting . . . Firestone's motion to strike the existing pleadings basically." (R. 167, Transcript of proceedings held on April 7, 2014, at 7.)

On April 24, 2014, the court granted Firestone's motion to dismiss the Counterclaim, finding that it was facially implausible. (*Id.* at 5.) Firestone then moved for summary judgment on its remaining claims against Meyer, arguing that he based his defenses on the same factual allegations asserted in the Counterclaim that the court previously had dismissed. (*Id.*) The court agreed and granted Firestone's motion. (*Id.*)

Subsequently, on September 19, 2014, Meyer filed an appeal, challenging the former district court's dismissal of the Counterclaim and granting of summary judgment in Firestone's favor. (R. 95.) The three corporations did not appeal. On August 10, 2015, the Seventh Circuit reversed and remanded the former district court's order. (R. 113 at 2.) Specifically, after accepting the allegations in the Counterclaim as true, the Seventh Circuit found that Meyer had stated a plausible claim of promissory estoppel. (*Id.* at 10–11.)

On November 5, 2015, the Executive Committee reassigned the case to this Court. In its April 19, 2016 Memorandum Opinion and Order, the Court clarified that the former district court's order dismissed the three corporations from the case. (R. 145.) The companies now request relief under Rule 60(b)(4) and Rule 60(b)(6) from the former district court's order dismissing their Counterclaim. (R. 159.)

## ANALYSIS

**I.**     **Rule 60(b)(4)**

Federal Rule of 60(b)(4) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding . . . [if] the judgment is void[.]" Fed. R. Civ. P. 60(b)(4). "Rule 60(b)(4) is intended for cases where the district court

5

issuing the underlying judgment lacked jurisdiction or acted in a manner inconsistent with due process." *Richards v. Stevens*, 327 Fed. App'x 659, 660 (7th Cir. 2009) (citing *Marques v. Fed. Reserve Bank of Chicago*, 286 F.3d 1014, 1018 (7th Cir. 2002); *Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 448 (7th Cir. 2000)); *see also Burris v. Shaw*, 124 Fed. App'x 431, at *1 (7th Cir. 2004) ("A void judgment has been narrowly defined, therefore, to exist only where a court usurps power by rendering a judgment over matters beyond the scope of authority granted to it by its creators.") (quoting *Ben Sager Chemicals Int'l., Inc. v. E. Targosz & Co.*, 560 F.2d 805, 812 (7th Cir. 1977)).

The three corporations do not allege that the district court lacked jurisdiction to issue the April 7, 2014 default judgment dismissing them from the case. Instead, they cursorily assert that "the District Court's entry of the April 24, 2014 Order dismissing the Defendants' Counterclaim, in their absence after having entered a default judgment in Plaintiff's favor on April 7, 2014, raises due process concerns sufficient to justify the relief under Rule 60(b)(4)." (R. 172 at 5–6.) The companies, however, fail to support their argument with any legal authority or analysis. The Seventh Circuit has made clear that undeveloped and merely perfunctory arguments like this are waived. *See United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) (finding that arguments "without discussion or citation to pertinent legal authority" in opening brief were waived); *see also Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) ("Merely reciting the Rule 59(a) standard and then tossing the motion into the court's lap is not enough. Failure to adequately present an issue to the district court waives the issue on appeal."); *United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (finding the argument was "decidedly underdeveloped and therefore waived"); *United States v. Foster*, 652 F.3d 776, 792 (7th Cir. 2011) ("As we have said numerous times, undeveloped arguments are deemed waived[.]")

6

(internal quotation marks and citation omitted). Thus, the Corporate Defendants have waived this argument. Regardless, there is no basis to support their assertion that the district court's 2014 orders violated their due process.

The three corporations also claim that they "are entitled to [r]elief [u]nder Rule 60(b)(4) based upon the [Seventh] Circuit Court of Appeal's Reversal of the District Court's April 24, 2014 Order." (R. 172 at 3.) The Seventh Circuit's ruling had no such effect.

On April 7, 2014, the district court properly granted Plaintiff's motion for default judgment against the Corporate Defendants for lacking corporate counsel. (R. 55, 56.); *see also Fox Valley Const. v. G. M. Randa, Inc.*, No. 09 C 3038, 2010 WL 3746852, at *1 (N.D. Ill. Sept. 15, 2010) (cautioning a corporate defendant that "failure to obtain substitute counsel may lead to the entry of an order of default and ultimately to entry of a default judgment against [it]") (citing *Fidelity Nat'l, Title Ins. Co. v. Intercounty Nat'l. Title Ins. Co.*, 310 F.3d 537, 541 (7th Cir. 2002) (noting that withdrawal of corporate counsel most likely "would leave [corporate entities] unrepresented, leading to default judgments against the three corporations (which can appear *only* by counsel)") (emphasis in original)). Indeed, "[a] corporation must be represented by counsel in legal proceedings." *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, 979 N.E.2d 50l, 365 Ill. Dec. 684, 688 at ¶ 17 (2012). As noted earlier, the district court also struck the corporations' pleadings. Accordingly, John Meyer was the sole defendant remaining in the case.

On April 24, 2014, the district court dismissed the Counterclaim as to Meyer, and, later, granted Firestone's motion for summary judgment based on the same facts. John Meyer appealed, and the three corporations, as they concede in their motion, did not appeal and were not parties to Meyer's appeal. *See Firestone Fin. Corp. v. John R. Meyer*, 796 F.3d 822 (7th Cir.

7

2015); *see also* (R. 159 at 3 ("Defendant Meyer appealed the Summary Judgment Order which terminated the case[.]").)

On August 10, 2015, the Seventh Circuit found that the district court had dismissed the Counterclaim and granted Firestone's summary judgment, in error. Specifically, the Seventh Circuit held that the Counterclaim was adequately pled. *Id.* This decision did not render the district court's April 7, 2014 default judgment "void" under Rule 60(b)(4). Instead, it simply allowed John Meyer, the sole remaining defendant in the case, to pursue the Counterclaim. Significantly, the three corporations never appealed the district court's April 7, 2014 order dismissing them from the case and striking their pleadings. Instead, over two years later, they now seek Rule 60(b) relief to reenter the case. *See United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1313 (7th Cir. 1995) ("[t]o prevail on a motion to vacate a default judgment under Rule 60(b), a party must show[, in part,] . . . quick action to correct the default[.]") (citing *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994); *United States v. DiMucci*, 879 F.2d 1488, 1495 (7th Cir. 1989)). "A Rule 60(b) motion," however, "is not a substitute for appeal[.]" *Stoller v. Pure Fishing, Inc.*, 528 F.3d 478, 480 (7th Cir. 2008) (citing *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000)). Thus, having shown neither jurisdictional nor due process maladies, the Court denies the Corporate Defendant's motion for Rule 60(b)(4) relief.

The three corporations' counterargument is unavailing. Specifically, they argue that "the district Court's prior April 7, 2014 Order granting Plaintiff's Motion for Default judgment did not address Defendant's Counterclaim, and the Corporate Defendants' failure to seek relief as to that Order is not fatal to the instant Motion." (R. 172 at 8.) Put differently, the Corporate Defendants assert that, although the Court dismissed them from the case, they nonetheless can

8

still participate by asserting their Counterclaim. This is nonsensical. After the Court dismissed the Corporate Defendants from the case, they failed to properly appeal and seek reentry. They may not now slip through the proverbial backdoor to continue pursuing their claims. This would render the default judgment meaningless. Indeed, doing so would equate to using a Rule 60(b) motion as a substitute for a timely appeal from their default judgment dismissing them from the case. As noted earlier, such a procedural action is improper. *See Stoller*, 528 F.3d at 480 (citing *Bell*, 214 F.3d at 801). Moreover, Judge Shadur *did* address the Counterclaim as to the three corporations on April 7, 2016. Indeed, not only did he dismiss the companies, but he also stated, "I am granting . . . Firestone's motion to strike the existing pleadings basically." (R. 167, Transcript of proceedings held on April 7, 2014, at 7.) Judge Shadur then granted Firestone's motion to dismiss the Counterclaim as to Meyer on April 24, 2014.

Regardless, the three corporations motion is untimely. Although there is no precise deadline to file a Rule 60(b)(4) or Rule 60(b)(6) motion, a party must make such a motion "within a reasonable time." Fed. R. Civ. P. 60(c)(1). What constitutes a reasonable time depends on the circumstances of the case. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. Wisconsin,* 769 F.3d 543, 548 (7th Cir. 2014). As noted earlier, parties seeking relief from default judgments must show, in part, "quick action to correct the default[.]" *Indoor Cultivation Equip.*, 55 F.3d at 1313. The district court dismissed the companies from the case on April 7, 2014. (R. 55, 56.) They retained counsel and filed their motion seeking relief from said default judgment on May 10, 2016—over two years later. This lengthy delay does not constitute "quick action." *Indoor Cultivation Equip.*, 55 F.3d at 1313. The three corporations counter that they had to wait for the Seventh Circuit's decision to bring the instant Rule 60(b) motion. *See* (R. 172 at 3.) The companies misunderstand the law. They must show "quick

9

action" to correct the default, which, in this case, means retaining counsel and seeking relief from the judgment, not filing a Rule 60(b) motion. Regardless, following the companies' logic, their motion was still untimely. John Meyer did not file his appeal until September 19, 2014—about five months after Judge Shadur dismissed the companies from the case. (R. 95.) The Seventh Circuit entered its decision on August 10, 2015, and its mandate issued on September 1, 2015. The three corporations then waited over eight months to file this motion in May 2016. In sum, discounting the appellate process still reveals that the companies waited over thirteen months to move for Rule 60(b) relief.[1] Thus, the Court denies the corporations' Rule 60(b) motion.

## II.  Rule 60(b)(6)

Finally, the three corporations seek relief under Rule 60(b)(6). Under Federal Rule of Civil Procedure 60(b)(6), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Relief under Rule 60(b)(6) 'is limited to extraordinary circumstances.'" *Huerth v. Pressman*, No. 10 C 5049, 2014 WL 688074, at *5 (N.D. Ill. Feb. 21, 2014) (quoting *Mendez v. Republic Bank*, 725 F.3d 651, 657 (7th Cir. 2013)); *see also Gonzalez v. Crosby*, 545 U.S. 524, 534, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005). Indeed, Rule 60(b)(6) "requires the Court to examine all the circumstances, bearing in mind the need for the party invoking the rule to demonstrate why extraordinary circumstances justify relief." *Ramirez v. U.S.*, 799 F.3d 845, 851 (7th Cir. 2015).

---

[1] If the Court interprets the Corporate Defendants' argument under Rule 60(b)(1), their motion meets the same fate. Under Rule 60(b)(1), the Court may "relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Rule 60(c)(1), however, mandates that a "motion under Rule 60(b) . . . (1), (2), or (3) [be filed] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Here, the Corporate Defendants moved for Rule 60(b) relief over thirteen months after the April 7, 2014 judgment, discounting the appellate process. As such, they are precluded from Rule 60(b)(1) relief.

The companies have not demonstrated extraordinary circumstances. Specifically, they conclusively state that "the [Seventh] Circuit Court of Appeal's decision, reversing the District Court's dismissal of Defendants' Counterclaim, clearly justifies this Court granting the Corporate Defendants relief from the dismissal order." (R. 172 at 8.) The companies fail to explain why this is so, let alone make it "clear." The Seventh Circuit's August 10, 2015 reversal enabled John Meyer to continue pursuing the case, including the Counterclaim. This holding does not amount to an automatic "green light" for the three corporations to reenter the case and join him in that pursuit. Instead, they remain dismissed from the case until they properly seek to reenter. To date, they have failed in that endeavor. As such, their motion for Rule 60(b) relief is denied.

## CONCLUSION

For the foregoing reasons, the Court denies the corporations' motion under Rule 60(b)(4) and Rule 60(b)(6) for relief from the default judgment dismissing them from the case.

**DATED: July 29, 2016**                **ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge